IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CRIM. NO. 11-00503 JMS |
| | ) |
| Plaintiff, | ) ORDER DENYING DEFENDANT |
| | ) PILIALOHA TEVES' MOTION TO |
| vs. | ) DISMISS COUNTS 1-16 OF THE |
| | ) SUPERSEDING INDICTMENT, |
| MAHEALANI VENTURA-OLIVER | ) DOC. NO. 196 |
| (01), AND | ) |
| PILIALOHA TEVES (03), | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## ORDER DENYING DEFENDANT PILIALOHA TEVES' MOTION TO DISMISS COUNTS 1-16 OF THE SUPERSEDING INDICTMENT, DOC. NO. 196

## I. INTRODUCTION

Defendants Mahealani Ventura-Oliver ("Ventura Oliver") and

Pilialoha K. Teves ("Teves") (collectively, "Defendants") are charged in a

September 1, 2011 Superseding Indictment ("SI") with engaging in a fraudulent

debt assistance program.[1]  Specifically, the SI asserts that Defendants falsely

claimed they could eliminate individuals' debt by using "bonds" and other legal

documents in return for a fee.  The SI charges Defendants with one count of

violating 18 U.S.C. § 371 (Count 1), and fifteen counts of violating 18 U.S.C.

---

[1] The SI charges additional Defendants, who are no longer part of this action.  The court therefore focuses on only the remaining Defendants.

§ 1341 (Counts 2-16), and charges Ventura-Oliver with additional counts for violations of 18 U.S.C. §§ 1957 and 287 (Counts 17, 18, and 25).

Currently before the court is Teves' Motion to Dismiss Counts 1-16 of the SI, Doc. No. 196, which Ventura-Oliver joins.  Doc. No. 199.  Although not entirely clear, Defendants appear to argue that Defendants did not engage in any misconduct when they created documents purporting to discharge individuals' debts because these individuals are Native Hawaiians and have title to lands of the Hawaiian Kingdom such that any mortgages on these properties are fraudulent.  Because the SI presumes the opposite (*i.e.*, that the debts and mortgages of these individuals were valid and the documents Defendants created to discharge these individuals' debts were fraudulent), Defendants argue that the SI raises a political question of whether Native Hawaiians have rights to these "sovereign lands," over which the court does not have jurisdiction.   Based on the following, the court DENIES the Motion to Dismiss.

## II.  BACKGROUND

Count 1 of the SI asserts that Defendants engaged in a conspiracy to (1) knowingly, and with intent to defraud, produce otherwise make, pass, utter, present and sell, false and fictitious instruments, documents, and other items purporting to be financial instruments issued under the authority of the United

States and the State of Hawaii in violation of 18 U.S.C. § 514; and (2) knowingly

devise a scheme and artifice to defraud and obtain money from other persons by

means of materially false and fraudulent pretenses, and for the purpose of

executing the scheme causing certain items to be delivered by United States mail in

violation of 18 U.S.C. § 1341.

The basis of Count 1 is that Defendants were associated with groups

based in Maui known as the "Hawaiiloa Foundation," "Ko Hawaii Pae Aina," and

"The Registry" (collectively, "Hawaiiloa Foundation"), and they allegedly

conducted seminars on Maui offering to teach others about Hawaii history and

property rights.  They also marketed a debt assistance program claiming to

eliminate mortgage, credit card, and other debt in exchange for a fee.  Under this

program, Defendants promised to teach individuals how to use "bonds" and other

legal documents to pay their debts by drawing on fictitious accounts purportedly

established for each individual at his or her birth.  Based on information provided

by these individuals, Defendants prepared various "bonds," "bonded promissory

notes," and "private money orders," which purported to be issued on their behalf

under the authority of the United States Treasury or the State of Hawaii.

Defendants then caused these individuals to send these documents to the United

States Treasury, the Federal Reserve Bank, the State of Hawaii, and their creditors

as a purported means of discharging their debts and forestalling mortgage foreclosure and debt collection efforts.

Counts 2 through 16 assert that as part of this scheme to defraud, Defendants knowingly caused to be delivered by the United States mail "Bonded Promissory Notes," "Private Offset Discharging and Indemnity," and "Private Money Orders" in violation of 18 U.S.C. § 1341.

Count 17 charges Ventura-Oliver with engaging in a monetary transaction, affecting interstate commerce, in criminally derived property with a value greater than $10,000 in violation of 18 U.S.C. § 1957.

Count 18 charges Ventura-Oliver with conspiring to submit false, fictitious, and fraudulent claims upon the Internal Revenue Service ("IRS") in violation of 18 U.S.C. § 287.

Count 25 charges Ventura-Oliver with knowingly making and presenting to the IRS a claim for an income tax refund of $20,465.22 knowing that such claim was false in violation of 18 U.S.C. § 287.

///

///

///

///

## III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Criminal Procedure Rule 12(b)(3)(B) provides that a defendant may file a motion to dismiss asserting "that the indictment or information fails to invoke the court's jurisdiction or to state an offense."  In general, Rule 12(b) allows consideration at the pretrial stage of any defense "which is capable of determination without the trial of the general issue."  *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993).  "A motion to dismiss is generally 'capable of determination' before trial 'if it involves questions of law rather than fact.'"  *Id.* (quoting *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986)).

"[A] Rule 12(b) motion to dismiss is not the proper way to raise a factual defense."  *Id.*  Specifically, a defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence.  *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996).  Therefore, a motion to dismiss an indictment may not be used as a device for summary trial of the evidence.  *Boren*, 278 F.3d at 914; *Jensen*, 93 F.3d at 669.

///

///

5

## IV. <u>DISCUSSION</u>

Defendants argue that the charges against them raise a political question over which the court does not have jurisdiction.  Specifically, Defendants are charged with engaging in a fraudulent scheme of providing individuals documents purporting to discharge their debts in exchange for a fee.  Defendants argue that these charges are based on the false presumption that the creditors of these individuals held valid mortgages on the individuals' property.  According to Defendants, these individuals are Native Hawaiians who have sovereign rights to their property, and as a result the SI implicates "the fight to determine the ownership of the land in Hawaii between the Native Hawaiians who have sovereign rights to the land through the Kingdom of Hawaii and Royal Patents and others who do not have such rights."  Doc. No. 196, Mot. at 21.  Defendants assert that resolution of this dispute would require the court "to decide the underlying questions of the 1893 takeover of the Kingdom of Hawaii, the 1894 annexation of the Kingdom of Hawaii, the subjugation of the Native Hawaiians, and the sovereignty over and rights of the Native Hawaiians to their sovereign land today."  Doc. No. 196, Mot. at 20.  The court rejects this argument.

First, to state the obvious, Hawaii is a state of the United States such that Defendants' assertion that mortgagors may somehow cancel their debts on the

basis of Hawaiian sovereignty is untenable.  The Ninth Circuit, this court, and Hawaii state courts have rejected arguments asserting Hawaiian sovereignty.  *See United States v. Lorenzo*, 995 F.2d 1448, 1456 (9th Cir. 1993) (holding that the Hawaii district court has jurisdiction over Hawaii residents claiming they are citizens of the Sovereign Kingdom of Hawaii); *Kupihea v. United States*, 2009 WL 2025316, at *2 (D. Haw. July 10, 2009) (dismissing complaint seeking release from prison on the basis that plaintiff is a member of the Kingdom of Hawaii); *State v. Kaulia*, 128 Haw. 479, 487, 291 P.3d 377, 385 (2013) (finding that regardless of its origins, the State of Hawaii is a lawful government and that "[i]ndividuals claiming to be citizens of the Kingdom and not of the State are not exempt from application of the State's laws."); *State v. French*, 77 Haw. 222, 228, 883 P.2d 644, 649 (Haw. App. 1994) ("[P]resently there is no factual (or legal) basis for concluding that the [Hawaiian] Kingdom exists as a state in accordance with recognized attributes of a state's sovereign nature.") (quotations omitted).

That Plaintiffs frame their sovereignty argument in terms of raising a non-justiciable political question does not change this outcome.  Specifically, the court recognizes that the Supreme Court has stated that the question of "[w]ho is a sovereign . . . of a territory, is a not a judicial, but a political, question, the determination of which by the legislative and executive departments of any

government conclusively binds the judges, as well as all other officers, citizens, and subjects of that government." *Jones v. United States*, 137 U.S. 202, 212 (1890). But this "political" question has already been answered -- Hawaii was admitted as the 50th State of the Union in 1959.

Further, Defendants' reliance on *Sai v. Clinton*, 778 F. Supp. 2d 1 (D. D.C. 2011), does not change the analysis. In *Sai*, the plaintiff, as the purported acting Regent of the Kingdom of Hawaii, brought a civil action challenging the constitutionality of the annexation of Hawaii by the United States and seeking a declaration that his Hawaii conviction for theft violated federal and international law. Dismissing the action, *Sai* explained that "each of Plaintiff's claims is based on his assertion that the exercise of sovereignty by the United States over the Hawaiian Islands violates federal and international law," which is a nonjusticiable political question. *Id.* at 6. *Sai* reasoned that granting plaintiff relief would require the court to disturb "a judgment of the legislative and executive branches that has remained untouched by the federal courts for over a century" -- *i.e.*, that "[s]ince its annexation in 1898 and admission to the United as a State in 1959, Hawaii has been firmly established as part of the United States." *Id.* at 7.

*Sai* neither holds nor suggests that a defendant can obtain dismissal of an indictment by raising a (wholly frivolous) political question as his defense in a

criminal action.  Rather, *Sai* confirms that courts will not address claims that essentially challenge that Hawaii is a part of the United States.  And although *Sai* dismissed the action for raising a nonjusticiable political question, that result was due to the fact that the plaintiff was asserting Hawaii sovereignty as an affirmative claim in a civil action.  In comparison, this is a criminal action in which Defendants seek to raise Hawaii sovereignty defensively to preclude the criminal charges against them.  Thus, to the extent *Sai* is at all relevant to this action, the court follows *Sai* by finding that Defendants cannot raise such arguments before this court.  The court therefore DENIES Defendants' Motion to Dismiss.

Defendants also argue that in the alternative, the court should "immediately certify the question to the 9th Circuit for review."  Doc. No. 196, Mot. at 29.  The court rejects Defendants's request.  "Under 28 U.S.C. § 1291, a criminal case is generally not subject to appellate review 'until conviction and imposition of sentence.'"  *United States v. Hickey*, 367 F.3d 888, 890 (9th Cir. 2004) opinion amended on denial of reh'g, 400 F.3d 658 (9th Cir. 2005) (quoting *Flanagan v. United States*, 465 U.S. 259, 263 (1984)); *see also United States v. Samueli*, 582 F.3d 988, 991 (9th Cir. 2009) ("Interlocutory appeals are typically unsuitable for criminal cases. In this sphere interlocutory appeals can be 'fatal to the vindication of the criminal law' because ensuing delays will threaten to

prejudice the government's ability to prove its case and increase litigation and detention costs."). Thus, denials of pretrial motions are not usually appealable except under limited circumstances. *Hickey*, 367 F.3d at 890 (citing *See United States v. Cejas*, 817 F.2d 595, 596 (9th Cir. 1987)). None of those circumstances apply here. *See, e.g.*, *Samueli*, 582 F.3d at 992 (stating that an "interlocutory order is appealable only where it affects a 'right not to be tried'" (quoting *United States v. Austin*, 416 F.3d 1016, 1020 (9th Cir. 2005)).

## V.  CONCLUSION

For the foregoing reasons, the court DENIES Defendants' Motion to Dismiss the SI.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 30, 2013.



```
 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge
```

*United States v. Ventura-Oliver et al.*, Crim. No. 11-00503 JMS, Order Denying Defendant Pilialoha Teves' Motion to Dismiss Counts 1-16 of the Superseding Indictment, Doc. No. 196