IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) CRIM. NO. 11-00503 JMS |
|---|---|
| Plaintiff, | ) PRELIMINARY ORDER OF<br>) FORFEITURE |
| vs. | ) |
| MAHEALANI VENTURA-OLIVER<br>(01), | ) |
| Defendant. | ) |

## **PRELIMINARY ORDER OF FORFEITURE**

### **I. INTRODUCTION**

On October 22, 2013, after a three-week jury trial, Defendant Mahealani Ventura-Oliver ("Defendant") was found guilty of nineteen counts of the September 1, 2011 Superseding Indictment, including counts for conspiracy to commit mail fraud, mail fraud, money laundering, and making of false claims against the United States. The government sought forfeiture of certain specific property pursuant to 18 U.S.C. §§ 981(a)(1)(C) & 982(a)(1) and 28 U.S.C. § 2461(c) on the mail fraud and money laundering counts, and Defendant elected that the court, as opposed to the jury, determine forfeitability. *See* Doc. No. 296, Oct. 18, 2013 Tr. at 5; Fed. R. Crim. P. 32.2(b)(5)(A). Based on the forfeiture allegations in the Superseding Indictment, the evidence presented at trial, the

parties' memoranda, and the entire record before it, the court enters this Preliminary Order of Forfeiture.

## II.  **BACKGROUND**

The Superseding Indictment alleges that Defendant, along with co-defendants John Oliver, Pilialoha Teves, Leatrice Lehua Hoy, and Peter Hoy, fraudulently marketed a debt assistance program claiming to eliminate mortgage, credit card, and other debt in exchange for a fee through an organization Defendant and Oliver created called the Hawaiiloa Foundation (the "HLF").  Under this program, Defendants promised to teach individuals how to pay their debts by drawing on fictitious accounts purportedly established for each individual at his or her birth.  Based on information provided by these individuals, Defendants prepared various documents including "bonds," "bonded promissory notes," and "private money orders," which purported to be issued on their behalf under the authority of the United States Treasury or the State of Hawaii.  Defendants then caused these individuals to send these documents to the United States Treasury, the Federal Reserve Bank, the State of Hawaii, and their creditors as a purported means of discharging their debts and forestalling mortgage foreclosure and debt collection efforts.  *See generally* Doc. No. 66, Superseding Indictment.

The Superseding Indictment charged Defendant with conspiracy to

commit mail fraud, mail fraud, money laundering, and making of false claims against the United States. For the mail fraud counts, the Superseding Indictment sought forfeiture of the following specific property:

1. A personal money judgment against Defendant Mahealani Ventura-Oliver, in a sum equal to $468,000, which represents the amount of proceeds obtained as a result of the conspiracy and mail fraud offenses alleged in Counts 1-16 of the Superseding Indictment;

2. $7,807.79 seized on April 7, 2009, from Maui County Federal Credit Union ("MCFCU") Account Number xxxxxx01-01 held in the name of Hawaiiloa Foundation c/o Mahealani Ventura-Oliver and John D. Oliver;

3. $4,958.15 seized on April 7, 2009, from MCFCU Account Number xxxxxx01-75 held in the name of Hawaiiloa Foundation c/o Mahealani Ventura-Oliver and John D. Oliver;

4. $692.88 seized on April 7, 2009, from MCFCU Account Number xxxxxx03-01 held in the name of Mahealani Ventura-Oliver;

5. $182.96 seized on April 7, 2009, from MCFCU Account Number xxxxxx03-75 held in the name of Mahealani Ventura-Oliver;

6. $788.65 seized on April 7, 2009, from MCFCU Account Number xxxxxx01-01 held in the name of John D. Oliver Trust c/o John D. Oliver;

7. $2,748.84 seized on April 7, 2009, from Hawaii National Bank Account Number xxxx9424 held in the name of Pilialoha K. Teves Trust c/o Pilialoha K. Teves and an individual whose initials are K.K.T.;

8. $1,509.43 seized on April 7, 2009, from Hawaii National Bank Account Number xxxxxx7653 held in the name of Pilialoha K. Teves Trust c/o Pilialoha K. Teves and an individual whose initials are

K.K.T.;

9. $14,679.30 seized on April 7, 2009, from First Hawaiian Bank Account Number xxxx5438 held in the name of Petro T. Hoy Trust c/o Petro T. Hoy;

10. $43,300.00 in United States currency seized on April 7, 2009, from John D. Oliver and Mahealani Ventura-Oliver;

11. $40,689.00 in United States currency voluntarily surrendered on April 30, 2009, by Leatrice Lehua Hoy and Peter Hoy, aka "Petro Hoy;"

12. A cream 2005 Toyota Tacoma pickup truck bearing Hawaii license plate number MNA-551 and vehicle identification number 5TETX22N15Z071504, and registered to John D. Oliver, which was seized on April 7, 2009, from John D. Oliver and administratively forfeited on February 18, 2011;

13. A silver 2006 Toyota Tacoma pickup truck bearing Hawaii license plate number 646-MDC and vehicle identification number 5TENX62N76Z246033, and registered to John D. Oliver and an individual whose initials are I.K.A.C., which was seized on April 7, 2009, from John D. Oliver and administratively forfeited on February 18, 2011; and

14. Assorted gold and silver collectible coins which were voluntarily surrendered on April 30, 2009, by Leatrice Lehua Hoy and Peter Hoy, aka "Petro Hoy;"

As to the money laundering charge, the Superseding Indictment sought forfeiture of "[a] sum of money equal to $10,580.59, which represents the amount of money involved in the money laundering offense alleged in Count 17 of this Superseding Indictment."

On October 22, 2013, after a three-week jury trial, Defendant was

4

found guilty of nineteen counts of the Superseding Indictment, including (1) conspiracy to commit mail fraud and to produce fictitious obligations (Count 1); mail fraud (Counts 2-16); money laundering (Count 17); conspiracy to submit false claims to the Internal Revenue Service (Count 18); and submitting a false claim to the Internal Revenue Service (Count 25).

Defendant requested that the court, as opposed to the jury determine forfeitability of the Subject Properties. *See* Doc. No. 296, Oct. 18, 2013 Tr. at 5; Fed. R. Crim. P. 32.3(b)(5)(A). As a result, the government filed its Memorandum on January 17, 2014, Doc. No. 298, Defendant filed her Memorandum on March 24, 2014, Doc. No. 320, and the government filed a Response on April 4, 2014. Doc. No. 329. The court held a status conference on April 28, 2014. On May 29, 2014, Defendant submitted a Supplement. Doc. No. 349.

### III. <u>STANDARD OF REVIEW</u>

18 U.S.C. § 981(a)(1)(C), in conjunction with 28 U.S.C. § 2461(c), authorizes criminal forfeiture for mail fraud offenses. In particular, 18 U.S.C. § 981(a)(1)(C) authorizes civil forfeiture of "any property, real or personal, which constitutes or is derived from proceeds traceable to a violation" of any of the offenses designated as "specified unlawful activity" under 18 U.S.C. § 1956(c)(7).

In turn, § 1956(c)(7)(A) includes mail fraud.[1] Finally, 28 U.S.C. § 2461(c) authorizes criminal forfeiture where "a forfeiture is authorized in connection with a violation of an Act of Congress," which in this case is the civil forfeiture statute, 18 U.S.C. § 981. *See United States v. Vampire Nation*, 451 F.3d 189, 200 (3d Cir. 2006). Thus, § 2461(c), in combination with 18 U.S.C. § 981(a)(1)(C), permits the forfeiture of proceeds from a mail fraud scheme. *See United States v. Pena*, 380 Fed. Appx. 623, 627 (9th Cir. 2010) (discussing forfeiture for mail fraud offenses); *Vampire Nation*, 451 F.3d at 200 (interpreting § 2461(c) to "explicitly permit criminal forfeiture for *general* mail fraud, not just for mail fraud against financial institutions"); *United States v. Jennings*, 487 F.3d 564, 585 (8th Cir. 2007) (holding that § 2461(c) allows for criminal forfeiture of the proceeds of general mail fraud).

"Proceeds" as used in § 981(a)(1)(C) include "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." *See* 18 U.S.C. § 981(a)(2)(A); *see also*

---

[1] A "specified unlawful activity" includes an offense listed in 18 U.S.C. § 1961(1). And mail fraud is listed as a § 1961 offense. And criminal forfeiture applies equally to claims for mail fraud as to claims for conspiracy to commit mail fraud. *See, e.g.*, *United States v. Newman*, 659 F.3d 1235, 1243 (9th Cir. 2011) (reviewing district court's criminal forfeiture determination stemming from conspiracy to commit mail fraud offense).

*United States v. Venturella*, 585 F.3d 1013, 1015 (7th Cir. 2009) (holding that forfeiture "is not limited to the amount of the particular mailing but extends to the entire scheme"). In light of this expansive definition of "proceeds," courts have held that forfeiture is not limited to the amounts alleged in an indictment. *Venturella*, 585 F.3d at 1017 ("The plain language of the section 981(a)(1)(C) along with the expansive definition of 'proceeds' indicates that the statute contemplates the forfeiture of property other than the amounts alleged in the count(s) of conviction.").

The government has the burden to establish the required connection between the property and the offense by a preponderance of the evidence. *See United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1149 (9th Cir. 2011) ("[T]o achieve criminal forfeiture, the government first must prove, beyond a reasonable doubt, that the defendant is guilty of the crime. The government then must prove, by a preponderance of the evidence, a nexus between the property and the crime.") (citing *United States v. Nava*, 404 F.3d 1119 (9th Cir. 2005); *see also United States v. Shryock*, 342 F.3d 948, 991 (9th Cir. 2003) ("We therefore join all other circuit courts of appeals that have considered the question, and conclude that *Apprendi* does not disturb the rule that statutorily-prescribed forfeiture is constitutional when supported by the preponderance of the

evidence.").

## IV. ANALYSIS

A.  **Amount of Proceeds Attributable to the Mail Fraud Scheme from the HLF**

The government seeks a personal money judgment against Defendant in the amount of $468,000, as the amount of proceeds obtained as a result of the conspiracy and mail fraud offenses alleged in Counts 1-16 of the Superseding Indictment. The government argues that $468,000 is the approximate amount Defendant obtained through operation of the HLF, while Defendant argues that the government failed to establish that this entire amount is linked to the mail fraud scheme.

The government has presented ample evidence establishing by a preponderance of the evidence that the proceeds from the mail fraud scheme were at least $468,000. In particular, the government presented evidence that on May 9, 2008, Defendant and her estranged husband, Oliver, opened a combined checking/savings account at Maui County Federal Credit Union in the name of the HLF. *See* Doc. No. 329-1, Gov't Attach. 1. The account opening documents included a resolution of the HLF's board of directors (which listed Defendant as the chair/treasurer, Oliver as the vice-chair, and Defendant's daughter Ihilani Catugal as the secretary) providing that all monies received by the HLF would be

deposited in the accounts, with Defendant as the authorized signatory and Oliver as an authorized co-signer. *Id.* at 003343. Thus, these documents suggest that all funds deposited into this account were funds that the HLF received.

The government also presented evidence that all funds that the HLF received were part of this fraudulent debt assistance program. Oliver, a defendant cooperating with the government, testified that the HLF had no income other than fees obtained from participants in the debt elimination program:

> Q. And what money went into that account?
> A. Money that was made from the proceeds at the office. Yeah.
> Q. And what generated the proceeds?
> A. The -- the mortgage process from the -- from the -- notes and the trusts.
> Q. Okay. Did [the HLF] generate money from any source other than the process you've described?
> A. Not that I'm aware of.
> . . .
> Q. And I may have asked, I can't recall, but where did the money in [the HLF's] account come from?
> A. From the participants in the program.

Doc. No. 329-3, Gov't Attach. 3 at 87, 144. Thus, the trial testimony supports that all funds the HLF received were part of the debt elimination scheme.[2]

---

[2] Lehua Hoy, also a cooperating defendant, testified that the standard fee the HLF charged for its debt elimination program was $1,500 "per property," would be multiplied by the number of properties if the individual had more than one property, and would be higher for a "crisis situation" where someone had already received a foreclosure notice. Doc. No. 329-4, Gov't Attach. 4 at 145-46. According to Hoy, "a couple hundred" victims went through the

(continued...)

As to the total amount of funds the HLF received, Federal Bureau of Investigation Special Agent Steve Carter testified that he analyzed the HLF's bank records and determined that the total deposits in the HLF's account from May 9, 2008 to March 9, 2009 amounted to $468,573.65. Doc. No. 329-6, Gov't Attach. 6 at 76-77; *see also* Doc. No. 329-5, Gov't Attach. 5 at 33.1. Of the $468,573.65, Agent Carter determined that $443,653.56 represented deposits that "were related to the HLF," based "primarily from the memos of the checks" referencing "BLT," "mortgage payoff," "trusts," or "paralegal fees," and comparing the names on checks with those appearing on a title index on the HLF website listing the names of HLF program participants. *Id.* at 79; *see also* Doc. No. 329-5, Gov't Attach. 5 (listing deposits).[3]

Agent Carter further testified that beyond the deposits into the HLF account, other checks of HLF participants were deposited into separate accounts maintained by Defendant, Oliver, and Teves. *See* Doc. No. 329-6, Gov't Attach. 6 at 99-101. In particular, the government presented evidence establishing that participant checks were deposited into accounts maintained by Defendant in the

---

[2](...continued)
program while she was there from July 2008 through April 2009. *Id.* at 168-69.

[3] Agent Carter's spreadsheet reflects that the $443,653.56 figure did not include cash deposits, miscellaneous deposits, and interest income. *See* Doc. No. 329-5, Gov't Attach. 5 at 1.

amount of $16,880, Doc. No. 329-5, Gov't Attach. 5 at Ex. 34; Oliver in the amount of $31,875, *id.* at Ex. 35; and Teves in the amount of $7,000, *id.* at Ex. 36. These amounts, in addition to the total deposits into the HLF account, show by a preponderance of the evidence that proceeds from the mail fraud scheme exceeded the $468,000 sought as a money judgment.

In opposition, Defendant argues that the Presentence Report ("PSR") identified specific victims and that the amounts tied to these victims totaled only $90,255. *See* Doc. No. 320, Def.'s Memo. at 2-3. Defendant further argues that the court cannot assume that all funds deposited with the HLF were part of the fraudulent debt assistance scheme where trial evidence established that the HLF's original purpose was to connect people to their land titles, and that individuals volunteered with the HLF to offer genealogy research. *See* Doc. No. 320, Def.'s Memo. at 4; *see also* Doc. No. 320-2, Def.'s Ex. B (Oliver testifying that the purpose of the HLF was to "connect [people] to their lands, to help them to connect them to their land titles"); Doc. No. 320-3, Def.'s Ex. C (Denise Armitage testifying that she volunteered with the HLF to do genealogy research).

Defendant's arguments do not call into question the government's evidence -- the PSR identifies only those identifiable victims who filled out a victim information questionnaire, and Defendant has presented no specific

evidence that the HLF received monies outside of the fraudulent debt assistance program. Indeed, the court provided Defendant the opportunity to present evidence showing that the HLF received monies for legitimate business purposes, and in response Defendant notified the court that she would not submit any further evidence. *See* Doc. No. 349. Rather, given the evidence presented at trial detailing the numerous deposits from individuals into the HLF account directed to the fraudulent debt assistance scheme and the testimony that the HLF's only source of funds was from this scheme, the court finds that the government has established by a preponderance of the evidence that these funds are related to the mail fraud scheme. Further, the dates and amounts of the HLF account deposits correspond with the time frame of the conspiracy charged in Count 1 and the amounts typically charged to participate in the fraudulent scheme.

In sum, the government has established by a preponderance of the evidence that at least $468,000 represents proceeds from the mail fraud scheme charged in Counts 1-16 of the Superseding Indictment and of which Defendant was found guilty.

**B.    Additional Property Subject to Forfeiture for the Mail Fraud Counts**

Forfeiture allegations 2-14 contained in the Superseding Indictment seek forfeiture of monies and assets that were obtained through HLF funds.

Although Defendant does not contest forfeiture of this specific property, Defendant asks that all items seized (1) offset the $468,000 money judgment requested by the government to avoid double-counting; and (2) be used for restitution. *See* Doc. No. 320, Def.'s Memo. at 6.

As to the first request, the government does not dispute that the property described in allegations 2-14 should be deducted from the money judgment. *See also United States v. Segal*, 495 F.3d 826, 839 (7th Cir. 2007) (holding that amounts a defendant invested into a business must be deducted from a money judgment where the business itself is also forfeited). The court will therefore deduct the value of monies and assets listed in forfeiture allegations 2-14 of the Superseding Indictment from the total money judgment. In particular, the total value of the property described in forfeiture allegations 2-14 totals $195,472,[4] which will be subtracted from the money judgment of $468,000, for an adjusted money judgment of $272,528.[5]

As to Defendant's request that the amounts forfeited be used for

---

[4] Forfeiture allegations 12-14 are directed to two vehicles and an assortment of gold and silver collectible coins. The government asserts that the two vehicles were sold by the United States Marshal Service for a total of $22,500, Doc. No. 329, Gov't Resp. at 7 n.2, and that the coins were recently appraised at $55,615. *See* Doc. No. 330.

[5] The government also does not dispute as duplicative its request for forfeiture of a sum equal to $10,580.59 representing the amount of money involved in the money laundering offense alleged in Count 17. *See* Doc. No. 329, Gov't Resp. at 6. The court will therefore exclude the $10,580.59 sought in the Superseding Indictment.

13

restitution, *United States v. Carter*, 742 F.3d 440, 446 (9th Cir. 2014), held that "a defendant has no right to a credit against a restitution order equal to any part of the amount forfeited." Rather, "[f]orfeiture and restitution are separate components of many criminal sentences," and as a result, a defendant "'may be required to pay restitution and forfeit the same amounts.'" *Id.* (quoting *United States v. Newman*, 659 F.3d 1235, 1241 (9th Cir. 2011)). Thus, the court cannot order that the property forfeited be used for restitution.

## V. **CONCLUSION**

As a result of the guilty verdicts entered against Defendant Mahealani Ventura-Oliver on Counts 1-16 of the Superseding Indictment, for which the government sought forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), Defendant shall forfeit to the United States all property constituting, or derived from, proceeds/gross proceeds Defendant obtained directly or indirectly, as the result of such violations.

The court has determined, based on the forfeiture allegations in the Superseding Indictment, the evidence presented at trial, and evidence and argument presented in the parties' memoranda, that the following property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), and that the government has established the requisite nexus between such properties and the

offenses of conviction. The property to be forfeited is the following:

1. A personal money judgment against Defendant Mahealani Ventura-Oliver, in a sum equal to $272,528, which represents the amount of proceeds obtained as a result of the conspiracy and mail fraud offenses alleged in Counts 1-16 of the Superseding Indictment;

2. $7,807.79 seized on April 7, 2009, from Maui County Federal Credit Union ("MCFCU") Account Number xxxxxx01-01 held in the name of Hawaiiloa Foundation c/o Mahealani Ventura-Oliver and John D. Oliver;

3. $4,958.15 seized on April 7, 2009, from MCFCU Account Number xxxxxx01-75 held in the name of Hawaiiloa Foundation c/o Mahealani Ventura-Oliver and John D. Oliver;

4. $692.88 seized on April 7, 2009, from MCFCU Account Number xxxxxx03-01 held in the name of Mahealani Ventura-Oliver;

5. $182.96 seized on April 7, 2009, from MCFCU Account Number xxxxxx03-75 held in the name of Mahealani Ventura-Oliver;

6. $788.65 seized on April 7, 2009, from MCFCU Account Number xxxxxx01-01held in the name of John D. Oliver Trust c/o John D. Oliver;

7. $2,748.84 seized on April 7, 2009, from Hawaii National Bank Account Number xxxx9424 held in the name of Pilialoha K. Teves Trust c/o Pilialoha K. Teves and an individual whose initials are K.K.T.;

8. $1,509.43 seized on April 7, 2009, from Hawaii National Bank Account Number xxxxxx7653 held in the name of Pilialoha K. Teves Trust c/o Pilialoha K. Teves and an individual whose initials are K.K.T.;

9. $14,679.30 seized on April 7, 2009, from First Hawaiian Bank Account Number xxxx5438 held in the name of Petro T. Hoy Trust

c/o Petro T. Hoy;

10. $43,300.00 in United States currency seized on April 7, 2009, from John D. Oliver and Mahealani Ventura-Oliver;

11. $40,689.00 in United States currency voluntarily surrendered on April 30, 2009, by Leatrice Lehua Hoy and Peter Hoy, aka "Petro Hoy;"

12. A cream 2005 Toyota Tacoma pickup truck bearing Hawaii license plate number MNA-551 and vehicle identification number 5TETX22N15Z071504, and registered to John D. Oliver, which was seized on April 7, 2009, from John D. Oliver and administratively forfeited on February 18, 2011;

13. A silver 2006 Toyota Tacoma pickup truck bearing Hawaii license plate number 646-MDC and vehicle identification number 5TENX62N76Z246033, and registered to John D. Oliver and an individual whose initials are I.K.A.C., which was seized on April 7, 2009, from John D. Oliver and administratively forfeited on February 18, 2011; and

14. Assorted gold and silver collectible coins which were voluntarily surrendered on April 30, 2009, by Leatrice Lehua Hoy and Peter Hoy, aka "Petro Hoy;"

(the above-referenced properties are hereinafter collectively referred to as the "Subject Properties").

Upon entry of this Order, the United States Attorney General (or a designee) is authorized to seize the Subject Properties, and to conduct any discovery proper in identifying, locating or disposing of the property subject to forfeiture, in accordance with Federal Rule of Criminal Procedure 32.2(b)(3).

Upon entry of this Order, the United States Attorney General (or a

designee) is authorized to commence any applicable proceeding to comply with statutes governing third party rights, including giving notice of this Order.

The United States shall publish notice of this Order and its intent to dispose of the Subject Properties in such a manner as the United States Attorney General (or a designee) may direct. The United States may also, to the extent practicable, provide written notice to any person known to have an alleged interest in the Subject Properties.

Any person, other than the above-named Defendant, asserting a legal interest in the Subject Properties may, within thirty (30) days of the final publication of notice or receipt of notice, whichever is earlier, petition the court for a hearing without a jury to adjudicate the validity of his/her alleged interest in the Subject Properties, and for an amendment of the order of forfeiture, pursuant to 21 U.S.C. § 853(n).

Pursuant to Federal Rule of Criminal Procedure 32.2(b)(4), this Preliminary Order of Forfeiture shall become final as to Defendant at the time of sentencing or before sentencing if Defendant consents, and shall be made part of the sentence and included in the judgment. If no third party files a timely claim, this Order shall become the Final Order of Forfeiture, as provided by Federal Rule of Criminal Procedure 32.2(c)(2).

Any petition filed by a third party asserting an interest in the Subject Properties shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the Subject Properties, the time and circumstances of the petitioner's acquisition of the right, title or interest in the Subject Properties, and any additional facts supporting the petitioner's claim and the relief sought.

After the disposition of any motion filed under Federal Rule of Criminal Procedure 32.2.(c)(1)(A) and before a hearing on the petition, discovery may be conducted in accordance with the Federal Rules of Civil Procedure upon a showing that such discovery is necessary or desirable to resolve factual issues.

The United States shall have clear title to the Subject Properties following the court's disposition of all third-party interests, or, if none, following the expiration of the period provided in 21 U.S.C. § 853(n)(2), which is incorporated by 28 U.S.C. § 2461(c) for the filing of third party petitions.

///

///

///

///

///

The court shall retain jurisdiction to enforce this Order, and to amend it as necessary, pursuant to Federal Rule of Criminal Procedure 32.2(e).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 13, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Ventura-Oliver*, Crim. No. 11-00503-01 JMS, Preliminary Order of Forfeiture